# 22-2714-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



LETICIA FRANCINE STIDHUM,

*Plaintiff-Appellee,*

*v.*

HILLSIDE AUTO MALL, INC., ISHAQUE THANWALLA, JORY BARON,
RONALD M. BARON, ANDRIS GUZMAN, 161-10 HILLSIDE AUTO AVE, LLC,

*Defendants-Appellants.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York*

## BRIEF FOR DEFENDANTS-APPELLANTS

Emanuel Kataev
MILMAN LABUDA LAW GROUP PLLC
*Attorneys for Defendants-Appellants*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
516-328-8899

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record for Defendant-Appellants, 161-10 Hillside Auto Ave, LLC d/b/a Hillside Auto Outlet, Hillside Auto Mall Inc. d/b/a Hillside Auto Mall, state that there are no parent corporations or any publicly held corporation which owns 10% or more of its respective stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE.................................................................2

    A.  Nature of the Case and Relevant Procedural History .................................2

    B.  Statement of Facts ................................................................6

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT ...................................................................................10

    APPELLATE STANDARD OF REVIEW ......................................................10

    POINT I

    PLAINTIFF FAILED TO ALLEGE AN ADVERSE
    EMPLOYMENT ACTION................................................................13

    POINT II

    THE COMPLAINT FAILS TO PLEAD GUZMAN
    HAD DISCRIMINATORY INTENT..............................................23

    POINT III

    APPELLANT MUST BE DENIED LEAVE TO
    AMEND THE COMPLAINT .........................................................25

CONCLUSION ................................................................................27

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(A)(6) .................28

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ......................................28

CERTIFICATE OF SERVICE ..................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alvarado v. United Hospice, Inc.,
  20-CIV.-10790 (KMK),
  2022 WL 4485379 (S.D.N.Y. Sept. 27, 2022)....................................................13

Amaya v. Ballyshear LLC,
  295 F. Supp. 3d 204 (E.D.N.Y. 2018) ...............................................................23

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ...........................................................................10, 11, 12

Banco Safra S.A.-Cayman Is. Branch v. Samarco
  Mineracao S.A.,
  No. 19-3976-CV,
  2021 WL 825743 (2d Cir. Mar. 4, 2021)...........................................................26

Bockus v. Maple Pro, Inc.,
  850 Fed. Appx. 48 (2d Cir. 2021) ......................................................................12

Boyar v. Yellen,
  21-507, 2022 WL 120356 (2d Cir. Jan. 13, 2022)............................................11

Castillo v. Seviroli Foods, Inc.,
  No.: 21-CIV.-5 (EK) (JMW),
  2022 WL 889014 (E.D.N.Y. Mar. 25, 2022)....................................................23

City of Pontiac Policemen's & Firemen's
  Ret. Sys. v. UBS AG,
  752 F.3d 173 (2d Cir. 2014)...............................................................................26

Costello v. N.Y. State Nurses Ass'n,
  783 F. Supp. 2d 656 (S.D.N.Y. 2011)............................................13, 14, 15, 25

Culmone-Simeti v. New York City Dept. of Educ.,
  No. 17-CIV.-2313 (ER),
  2019 WL 2409736 (S.D.N.Y. June 7, 2019) ....................................................19

Davis v. New York City Dep't of Educ.,
    804 F.3d 231 (2d Cir. 2015)...............................................................4, 5, 21, 22

De Jesus-Hall v. New York Unified Ct. System,
    856 Fed. Appx. 328 (2d Cir. 2021) ...................................................12

Dimitracopoulos v. City of New York,
    26 F. Supp. 3d 200 (E.D.N.Y. 2014) ................................................16

Galabya v. N.Y.C. Bd. of Educ.,
    202 F.3d 636 (2d Cir. 2000)..............................................................12

Glascoe v. Solomon,
    No. 18-CIV.-8284 (AT), 2020 WL 1272120
    (S.D.N.Y. Mar. 17, 2020) .................................................................16

Gong v. City University of New York,
    846 Fed. Appx. 6 (2d Cir. 2021).......................................................23

Jones v. SmithKline Beecham Corp.,
    309 F. Supp. 2d 343 (N.D.N.Y. 2004)..............................................18

Kairam v. W. Side GI, LLC,
    793 Fed. Appx. 23 (2d Cir. 2019)........................................19, 20, 21

Kassner v. 2nd Ave. Delicatessen Inc.,
    496 F.3d 229 (2d Cir. 2007)..............................................................12

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)........................................................12, 23

Malone v. N.Y. Pressman's Union No. 2,
    No. 07-CIV.-9583 (LTS) (GWG),
    2011 WL 2150551 (S.D.N.Y. May 31, 2011) ...................................21

Mandala v. NTT Data, Inc.,
    988 F.3d 664 (2d Cir. 2021)..............................................................12

McKenna v. Santander Inv. Secs., Inc.,
    No.: 21-cv-941,
    2022 WL 2986588 (S.D.N.Y. Jul. 28, 2022) .........................5, 21, 22

Paul v. Postgraduate Ctr. for Mental Health,
    97 F. Supp. 3d 141 (E.D.N.Y. 2015) .................................................................13

Porat v. Lincoln Towers Cmty. Ass'n,
    464 F.3d 274 (2d Cir. 2006).................................................................................26

Reyes v. Westchester County Health Care Corp.,
    21-0410, 2021 WL 4944285 (2d Cir. Oct. 25, 2021),
    cert. denied, 212 L. Ed. 2d 579 (Apr. 18, 2022) ...............................................11

Rothstein v. UBS AG,
    708 F.3d 82 (2d Cir. 2013)...................................................................................10

Spaulding v. N.Y.C. Dep't of Educ.,
    No. 12-CIV.-3041 (KAM) (VMS),
    2015 WL 12645530 (E.D.N.Y. Feb. 19, 2015) ..................................................19

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)..............................................................................................12

TechnoMarine SA v. Giftports, Inc.,
    758 F.3d 493 (2d Cir. 2014).................................................................................26

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)..............................................................................................11

Todaro v. Siegel Fenchel & Peddy,
    No. 04-CIV.2939 (JS) (WDW),
    2007 WL 9724583 (E.D.N.Y. Feb, 27, 2007)......................................................4

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)..................................................................11, 12, 13

White v. Andy Frain Servs., Inc.,
    629 Fed. Appx. 131 (2d Cir. 2015) .....................................................................16

**Statutes**

28 U.S.C. § 1291 ..............................................................................................................1

28 U.S.C. § 1331 ..............................................................................................................1

42 U.S.C. § 2000e ........................................................................................1

Civil Rights Act of 1964 Title VII..................................................*passim*

Pregnancy Discrimination Act of 1978 ....................................................2

**Other Authorities**

5B C. Wright & A. Miller, Federal Practice and
    Procedure § 1357 (3d ed. 2004 & Supp. 2007) ..............................................11

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction in the underlying case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e, *et seq.* On September 15, 2022, the district court, Judge Hector Gonzalez ("Judge Gonzalez"), United States District Court Judge for the Eastern District of New York in Case No. 1:21-cv-7163 (HG) (RLM), issued a memorandum & Order denying Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. (A79-A87.)[1]

Defendant-Appellants timely filed a notice of appeal from this order on October 14, 2022. (A88.) This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

• Did the lower court err in finding that a resultant decrease in take-home pay in non-discretionary bonuses based on the volume of vehicles sold by an automobile salesperson due to an increase in waiting time constitutes an adverse employment action under Title VII of the Civil Rights Act of 1964?

• Did the lower court err in finding that the complaint states a claim upon which relief can be granted?

---

[1] "A" references are to the Joint Appendix filed with Defendant-Appellants' brief.

# STATEMENT OF THE CASE

## A.     Nature of the Case and Relevant Procedural History

Plaintiff-Appellee Leticia Francine Stidhum (hereinafter "Plaintiff" or "Stidhum") commenced this case on December 29, 2021[2] asserting causes of action under: (i) Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act of 1978 ("PDA"); (ii) disability discrimination under the New York State Human Rights Law ("NYSHRL"); (iii) sex discrimination under the NYSHRL; and (iv) pregnancy discrimination under the New York City Human Rights Law ("NYCHRL").  (A2, A38-A54).

On May 27, 2022, Defendants moved the district court by letter motion for a pre-motion conference in anticipation of their motion to dismiss for failure to state a claim upon which relief can be granted (A4, A7-9).  Defendants argued there that the complaint must be dismissed because Plaintiff fails to plead the existence of any adverse employment action as she voluntarily resigned and because the other issues she raises with her employment, i.e., waiting times, do not constitute adverse employment actions (A8-9).

---

[2] Plaintiff previously filed a complaint on September 25, 2019, raising the same allegations. It was dismissed by Order of the Hon. Rachel P. Kovner, U.S.D.J., without prejudice once Plaintiff complied with her obligation to exhaust administrative remedies.  (A41).  Thereafter, Plaintiff refiled her complaint. (Id.)

On June 3, 2022, Plaintiff opposed and asserted that Defendants altered the terms of her employment by "doubling and tripling the wait time of her customers," resulting in customers walking out, and because Plaintiff sold only a third of her sales volume in previous months as a result.[3] (A10-12). On the same day, the district court set a briefing schedule in lieu of a pre-motion conference. (A4).

On June 27, 2022, Defendants moved to dismiss. (A13-38). As relevant here, Defendants argued that, because Plaintiff: (i) admits that she voluntarily quit her employment; (ii) did not argue a constructive discharge; and (iii) cannot establish that "longer wait times" constitute an adverse employment action under the law, her claims under Title VII must be dismissed for failure to state a claim. (A26-27, A29-31). In addition, Defendants argued that Plaintiff's PDA claims must be dismissed for the same reasons her Title VII claims should be dismissed. (A34-35). Finally, Defendants argued that the district court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (A35-36).

On July 18, 2022, Plaintiff opposed Defendants' motion. (A55-70). There, Plaintiff argued that she suffered an adverse employment action because she has pled both "significantly diminished material responsibilities" when she was deprived access to Dealertrack and suffered a decrease in her take-home pay. (A66).

---

[3] As will be further discussed below, the Complaint alleges that Plaintiff was paid a salary of $300.00 per week, a "bonus" (commission, rather) of $150.00 per car sold, and five percent (5%) of the price of any car sold which "had a price in excess of [$3,500.00] in commission." (A43).

Plaintiff argued that the reduction in pay, including bonuses, is an adverse employment action. She cited, among other cases, <u>Todaro v. Siegel Fenchel & Peddy</u>[4] and <u>Davis v. New York City Dep't of Educ.</u>[5] (A66-67).

In <u>Todaro</u>, plaintiff's *salary* was reduced shortly after the defendants learned that Todaro was pregnant. (<u>Id.</u>) (emphasis added). In <u>Davis</u>, this Court held that the district court erred in ruling that the denial or reduction of a *discretionary* bonus can constitute an adverse employment action. (<u>Id.</u>) (emphasis added).

Plaintiff also argued that the temporal proximity between the disclosure of her pregnancy and taking away her access to Dealertrack was sufficiently close in time to permit the inference that access was taken away because of her pregnancy. (A67-68).

In further support of their motion, Defendants argued in reply that lack of access to a system like Dealertrack, which no other salespersons had access to, does not constitute an adverse employment action. (A74-75).

Defendants also argued that the elimination of speculative, potential future opportunities is insufficient to establish an adverse employment action with respect to her alleged reduction in bonuses. (A75).

---

[4] <u>See</u> No. 04-CIV.2939 (JS) (WDW), 2007 WL 9724583, at *15 (E.D.N.Y. Feb, 27, 2007).

[5] <u>See</u> 804 F.3d 231, 236 (2d Cir. 2015).

In addition, Defendants argued that the increased waiting times were not an adverse employment action because Plaintiff did not automatically earn her bonus once the Finance Department provided her customers numbers, and a customer could decide not to purchase a vehicle for any number of reasons after receiving numbers from the Finance Department. (A75-76).

On September 15, 2022, Judge Gonzalez denied Defendants' motion to dismiss. (A79-87). The district court correctly found that Plaintiff's deprivation of access to Dealertrack was not an adverse employment action. (A85). However, the court found that the decrease in Plaintiff's take-home pay *can* constitute an adverse employment action – and relied on this Court's decision in <u>Davis</u>, *supra*, as well as <u>McKenna v. Santander Inv. Secs., Inc.</u>,[6] where a district court found that plaintiff presented sufficient evidence to raise a question of fact as to whether defendants discriminated against her as a result of her pregnancy by reducing her *discretionary*[7] bonuses – in finding that Plaintiff has plausibly alleged that Defendants "decreased her bonus" by "increasing the average wait time for her customers" after Plaintiff announced her pregnancy, without doing the same to customers of her non-pregnant workers, "thereby decreasing the number of sales she was able to make." (A85).

---

[6] <u>See</u> No.: 21-cv-941, 2022 WL 2986588, at *9 (S.D.N.Y. Jul. 28, 2022).

[7] As will be further discussed *infra*, the district court failed to note that the decisions in <u>Davis</u> and <u>McKenna</u> related to discretionary bonuses, whereas Plaintiff's "bonuses" were not discretionary.

The district court also found that Plaintiff met her minimal burden of pleading an adverse employment action, and alleged sufficient facts to infer discriminatory motivation for the alleged conduct. (A85-86).

Finally, the district court denied Defendants' motion to dismiss the NYCHRL claim because Judge Gonzalez determined that the Title VII and NYSHRL claim was sufficiently pled. (A86-87).

On October 14, 2022, Defendant-Appellants timely appealed the memorandum & Order to the United States Court of Appeals for the Second Circuit (Docket No.: 22-2714). (A88.)

## B.    Statement of Facts

Stidhum is an adult female resident of the State of New York, and served as a successful car salesperson who worked for a little over three (3) months at "Hillside Auto."[8] (A41). Defendant Andris Guzman ("Guzman") was an employee in the Finance Department of Hillside Auto Outlet, where Plaintiff worked, and later became a General Manager who supervised Plaintiff. (A42-43). Stidhum was hired by Defendant Ishaque Thanwalla ("Thanwalla") on or about May 20, 2018 after being interviewed by him and another non-party employee. (A43).

---

[8] Notably, Plaintiff fails to allege whether she worked for both Hillside Auto Outlet and Hillside Auto Mall.

When she was hired, her pay consisted of: (i) a salary of $300.00 per week; (ii) a "bonus" (commission, rather) of $150.00 per car sold; and (iii) five percent (5%) of the price of any car sold which "had a price in excess of [$3,500.00] in commission." (A43). In other words, other than her fixed $300.00 weekly salary, Plaintiff's pay depended on how many vehicles she sold and whether those vehicles were sold at a certain profit margin.

Guzman began working at Defendants' dealership in August 2018 and thereafter became a general manager who supervised Plaintiff. (A43). Stidhum conclusorily alleges she was denied her commissions since August 2018 through the end of her employment with Defendants. (A44).

At some time prior to December 2018, Plaintiff was given "special trust" on the basis of her exemplary work performance whereby Thanwalla provided Stidhum, to the exclusion of all other salespersons,[9] with his password to Dealertrack so that she could assist the Finance Department with their duties. (A44). This is because Guzman, whose responsibility was to perform the functions of the Finance Department, frequently kept customers waiting longer than necessary,[10] "creating poor customer impressions" of Defendants' service. (Id.)

---

[9] Such special treatment eviscerates any notion that discrimination played any role in the terms and conditions of Plaintiff's employment. It bears emphasis that the district court correctly found that Plaintiff's deprivation of access to Dealertrack was not an adverse employment action. (A85).

[10] Notably, this allegation gives rise to the inference that customers were kept waiting *prior to* Plaintiff's pregnancy.

On November 23, 2018, Plaintiff learned that she was pregnant and informed Thanwalla, Guzman, and several other co-workers of her pregnancy on December 1, 2018. (A44-45). Meanwhile, Thanwalla went on vacation in early December and returned to work on or about January 9, 2019. (A45).

Based on her complaint allegations, after Plaintiff announced her pregnancy, her wait times doubled or tripled to forty (40) minutes or sixty (60) minutes, respectively, because Guzman purportedly made her wait, whereas prior to that time, her wait times were slightly shorter than everyone else's wait time, as she had access to the Dealertrack system which other salespersons did not have (A45). Although Plaintiff concludes that her wait time was longer than other salespersons, she identifies no predicate facts upon which this conclusion is based.[11] Indeed, in response to Plaintiff's complaint to Guzman about the long wait times, he responded that *everybody* had to wait, or that the process *took time*. (A46) (emphasis added).

As a result of the increased wait times, Plaintiff claims that customers would walk out on her and she was unable to sell vehicles so as to qualify for any "bonus." (A45-46).

---

[11] The unsupported suggestion that finance information as to potential customers handled by Plaintiff, alone, would be delayed for twenty or forty minutes is, itself, preposterous, and there are, unsurprisingly, no predicate facts to support such a claim. For instance, the Complaint is devoid of allegations that Plaintiff witnessed a single other salesperson request finance information after her and receive such information before her. Much less, she fails to allege multiple instances of this occurring. Rather, her naked conclusory allegation that she had to wait longer than others is a conclusion without any predicate facts supporting it, which is precisely the type of allegation that must be disregarded by a court reviewing the complaint for its facial sufficiency.

8

Crucially, Plaintiff concedes her bonus is based *solely* on the number of cars sold. (A46). As such, it is not discretionary.

In contrast to herself, Plaintiff alleges that other salespersons who were not pregnant waited only about twenty (20) minutes.[12] (A46).

When Thanwalla returned from vacation on January 10, 2019, Plaintiff complained to him about Guzman's conduct but Thanwalla did nothing. (A46). Thus, four days later on January 14, 2019, Plaintiff voluntarily quit. (A46).

There were no other pregnant employees at the dealership (A47).

## SUMMARY OF THE ARGUMENT

Plaintiff fails to identify an adverse employment action such that she could state a claim for relief under Title VII. The increased waiting times, alone, are too speculative to give rise to an adverse employment action – let alone an inference that it arose under circumstances giving rise to an inference of discrimination – because a customer could decide not to purchase a vehicle for any number of reasons after receiving numbers from the Finance Department.

---

[12] These allegations conflict with Plaintiff's earlier allegation that Guzman, whose responsibility was to perform the functions of the Finance Department, frequently kept customers waiting longer than necessary such that Plaintiff was given special access to Dealertrack prior to her pregnancy. (A44). In other words, if Guzman generally took twenty (20) minutes to provide all other salespeople numbers, and they were able to make sales because their customers would not walk out, then Plaintiff's earlier allegation that Guzman frequently kept customers waiting longer than necessary such that he created a poor impression makes it implausible that Guzman made Plaintiff wait longer than necessary after her pregnancy any more than he did prior to her pregnancy.

In addition, as a matter of common sense, it is generally known that a vehicle purchase typically takes hours to complete and being forced to wait longer than twenty (20) minutes merely to obtain numbers from the Finance Department, alone, is too speculative to constitute adverse action.

Although the district court found that a resultant decrease in take-home pay can constitute an adverse employment action, its holding relies on cases dealing with discretionary bonuses, whereas here, Plaintiff fails to plead that her salary was reduced, and her "bonuses" were not discretionary because Plaintiff was paid solely based on the volume of vehicles sold with respect to her "bonus," and such a bonus is not discretionary.

## ARGUMENT

## APPELLATE STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) dismissal, the Second Circuit must accept as true all non-conclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiff's favor. See, e.g., Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Further, the Second Circuit must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citing 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 & Supp. 2007)). If the facts alleged are ambiguous, the applicable substantive law defines the range of inferences that are permissible. See, e.g., Iqbal, 556 U.S. at 675 ("In Twombly, [550 U.S.] at 553-554 ... the Court found it necessary first to discuss the antitrust principles implicated by the complaint"). Accordingly, the Second Circuit should "begin by taking note of the elements a plaintiff must plead to state a claim ...." See Id.

"[T]o defeat a motion to dismiss ... in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) [her] ... sex ... was a motivating factor in the employment decision." See Boyar v. Yellen, 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015)).

An adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." See Reyes v. Westchester County Health Care Corp., 21-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021), cert. denied, 212 L. Ed. 2d 579 (Apr. 18, 2022) (citation omitted).

To be sure, "at the initial stage of the litigation" in a Title VII case, "the plaintiff does not need substantial evidence of discriminatory intent." Id. Instead, the

11

plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." See Bockus v. Maple Pro, Inc., 850 Fed. Appx. 48, 50 (2d Cir. 2021) (unpublished) (citations omitted). However, even under this "minimal burden," the plaintiff must allege sufficient allegations to "nudge[ ] [his] claims across the line from conceivable to plausible."[13] Id.

With respect to adverse employment actions, "subjective, personal disappointments do not meet the objective *indicia* of an adverse employment action." See De Jesus-Hall v. New York Unified Ct. System, 856 Fed. Appx. 328, 330 (2d Cir. 2021) (unpublished). An actionable adverse employment action is a "'materially adverse change' in the terms and conditions of employment." See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

"Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

---

[13] For decades, Title VII claims – just like all other claims – were subject to a plaintiff-friendly notice pleading standard. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). That changed with the Supreme Court's announcement of the plausibility pleading standard in Twombly and Iqbal. For better or for worse, that standard made it harder for all plaintiffs, not just Title VII plaintiffs, to state a claim for relief. Although one can surely debate the merits of this approach, neither the Supreme Court nor this Court has ever suggested that Title VII claims are somehow exempt from the plausibility standard. See Mandala v. NTT Data, Inc., 988 F.3d 664, 669 (2d Cir. 2021) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (applying the plausibility standard to a Title VII disparate treatment claim); Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)

material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." See Vega, 801 F.3d at 85

## POINT I

### PLAINTIFF FAILED TO ALLEGE AN ADVERSE EMPLOYMENT ACTION

Plaintiff alleges that Guzman began to treat her differently once he learned of her pregnancy by making her wait longer than other salespersons, who were not pregnant, to receive numbers from the Finance Department to assist salespersons in selling vehicles to customers. She specifically alleges that she was forced to wait two to three times longer to obtain numbers, and that prospective customers would leave in frustration without purchasing a vehicle from her due to Guzman's "sabotage." In essence, Plaintiff is alleging that Guzman's inefficiencies (something she also complained of prior to her pregnancy) constituted an adverse employment action. However, poor workplace support or workforce efficiencies do not constitute adverse employment decisions as a matter of law, but rather, an adverse employment action must be more than trivial, insubstantial, or petty to be actionable. See Alvarado v. United Hospice, Inc., 20-CIV.-10790 (KMK), 2022 WL 4485379, at *14 (S.D.N.Y. Sept. 27, 2022); see also Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 677–78 (S.D.N.Y. 2011) (explaining that "failing to provide [the plaintiff] with necessary information and/or support, thereby 'setting her up to fail,' "did not constitute an adverse employment action); Paul v.

Postgraduate Ctr. for Mental Health, 97 F. Supp. 3d 141, 190 (E.D.N.Y. 2015) (("[The] [p]laintiff's complaint that he should receive more pay to compensate him for having more assignments is an employment-related grievance amounting to dissatisfaction with his working conditions that cannot qualify as an adverse employment action").

The plaintiff in Costello alleged a whole host of issues in addition to another employee's failure to provide necessary information and/or support to help her succeed.  See Costello, 783 F. Supp. 2d at 677-78.  For example, in Costello, the plaintiff claimed that she was: (i) denied a request for a hotel overnight stay on February 11, 2008; (ii) sent to an assignment in Buffalo and that others outside of her protected class were generally given preferential treatment with respect to work assignments; (iii) given negative performance evaluations; (iv) micromanaged with respect to her schedule and denied a "work-at-home" day; (v) "overloaded" by her employer to "cause her to be deficient in her job performance;" (vi) *not provided with necessary information and/or support*, thereby "setting her up to fail" and "engag[ed] in conduct designed to result in discipline;" and (vii) "inundate[d] … with emails and questions regarding her work performance."  Id.

The Costello court rejected plaintiff's claims that those failures constituted adverse employment decisions, reasoning that Costello "suffered no demotion, material loss of benefits, or significantly diminished material responsibilities."  Id.

14

The facts here are even more compelling than in <u>Costello</u> to justify dismissal for failure to state a claim.  Here, as in <u>Costello</u>, Plaintiff alleges that she was discriminated against because another employee failed to provide her with the information and support she needed to succeed in selling vehicles.  However, in this case, Plaintiff essentially made the same complaint about Guzman prior to her pregnancy.  The essence of her complaint appears to be that she is upset that she no longer had "special privileges" to access Dealertrack, herself, but no other salesperson had that privilege.[14] Clearly, there are a host of factors that go into selling a car. It would be pure speculation to conclude that waiting for finance information, which all salespersons had to do, caused a sale not to be consummated, as opposed to other factors, such as the salesperson's ability to keep their potential customers interested or engaged.

In any event, as the Court in <u>Costello</u> held, "none of these alleged actions qualify as adverse employment actions." <u>Id.</u> at 678.

Here, too, a workplace inefficiency, such as an  increased waiting time for finance information, cannot constitute an adverse employment action as a matter of law.  If it did, business would be bogged down with endless claims of adverse

---

[14] For this reason, the court below found that revoking her access to Dealertrack was not an adverse employment action.  (A85) ("Plaintiff's allegations that she was deprived access to the Dealertrack program and "could no longer run customer credit scores or pre-fill financing applications" are not enough to constitute adverse action because as Plaintiff herself described, she was given unique access and received a benefit that none of her colleagues received").

employment decisions based on real or imagined workplace slights. Accordingly, here, Plaintiff's Title VII claims must be dismissed.

Similarly, other courts have held that another employee's refusal to work with a plaintiff does not constitute an adverse employment action. See Glascoe v. Solomon, No. 18-CIV.-8284 (AT), 2020 WL 1272120, at *7 (S.D.N.Y. Mar. 17, 2020) ("Although she claims that Smith 'refused to work with' her, … Smith's conduct cannot be characterized as behavior that was "more disruptive than a mere inconvenience or alteration of job responsibilities' … Moreover, the allegation that there was 'tension' between Smith and Plaintiff also fails to satisfy the adverse employment action element because it typifies the 'trivial harms' and 'petty slights or minor annoyances that often take place at work.'") (citing White v. Andy Frain Servs., Inc., 629 Fed. Appx. 131, 133 (2d Cir. 2015) (internal quotation marks and citation omitted); see also Dimitracopoulos v. City of New York, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) ("Scheduling … issues … are generally not considered materially adverse employment actions").

Here, Plaintiff's allegations are similar to those in Glascoe.

The wait times for finance information due to Guzman supposed response time to Plaintiff were nothing more than mere inconvenience and she made the same complaint, i.e., that Guzman was slow to provide numbers, before her pregnancy. Moreover, Guzman explained it takes time to provide numbers and that everybody

had to wait when Plaintiff complained about the wait time. These facts are quintessential "trivial harms, petty slights, and minor annoyances."

Moreover, Plaintiff did not plausibly plead that, but for the wait times, she would not suffer a decrease in her take home pay. Plaintiff was a commissioned salesperson who was paid primarily based on the number of vehicles she sold in addition to a weekly draw. In her complaint, she specifically alleges that she earned a weekly salary of $300.00, a "bonus" or commission of $150.00 per vehicle sold, and a five percent (5%) additional commission for vehicles that "had a price in excess of [$3,500.00] in commission." (A43). She alleged, further, that it was generally necessary for customers to wait for the Finance Department in order to sell vehicles,[15] although long wait times left a bad impression on customers. (A44).

Plaintiff alleged that Guzman "increased" her waiting times following her pregnancy announcement, and that she was unable to sell vehicles because customers left as they did not want to wait for the Finance Department. (A45-46).

As a result, Plaintiff asserts she did not earn a $150.00 "bonus" because she did not sell the vehicle, the sale of which is explicitly required to earn the commission. As set forth below, this resultant decrease in her pay does not constitute an adverse employment action. This is so for several reasons.

---

[15] At least, for the majority of customers who require bank financing to purchase a vehicle.

First, Plaintiff's claim that she lost customers due to longer wait times is too speculative, as customers could have decided not to purchase a vehicle for any number of reasons, including because the numbers provided were not satisfactory.

Second, Plaintiff fails to plead that her weekly salary of $300.00 was decreased, or that her $150.00 bonus per vehicle sold was decreased to some amount lower than $150.00. Thus, if she sold a vehicle, she would still earn $150.00, just like she did before her pregnancy; conversely, if she failed to sell a vehicle, for whatever reason, she would not get $150.00, just like she did before her pregnancy. See, e.g., Jones v. SmithKline Beecham Corp., 309 F. Supp. 2d 343 (N.D.N.Y. 2004) (holding that employer's placement of employee in plan in which 80% of her pharmaceutical and healthcare sales would be to hospitals and 20% would be to non-institutional buyers, such as private physicians, was not adverse employment action within meaning of Title VII). Whereas a *changed* commission plan like in Jones is not considered an adverse employment action, Plaintiff fails to allege an adverse employment action where her pay plan remained the same.

Third, despite Plaintiff's allegation that she earned less in take home pay as a result of increased waiting times, she has not alleged – nor can she plausibly allege – that the sole reason she earned less in commissions was due to Guzman requiring her to wait longer for numbers from the Finance Department, rather than other factors, such as skill, customer service, or plain luck, all of which equally may have

impacted her ability to consummate sales.  See Culmone-Simeti v. New York City Dept. of Educ., No. 17-CIV.-2313 (ER), 2019 WL 2409736, at *5 (S.D.N.Y. June 7, 2019) ("Finally, [the plaintiff] states that she received an overall ineffective rating because of age discrimination, which denied her the right to earn supplemental income. … Mere negative performance evaluations that resulted in losing an opportunity to earn supplemental income do not constitute adverse employment actions where they were not accompanied by negative consequences to the conditions of the plaintiff's employment … Here, the ineffective rating did not impact the terms and conditions of her employment as a teacher.") (citing Spaulding v. N.Y.C. Dep't of Educ., No. 12-CIV.-3041 (KAM) (VMS), 2015 WL 12645530, at *36–37 (E.D.N.Y. Feb. 19, 2015)).

Moreover, this Court previously dealt with similar cases.  In Kairam v. W. Side GI, LLC,[16] the plaintiff alleged that the defendants refused to refer patients to her because of her protected class.

When the plaintiff in Kairam asked during an all-doctors meeting why defendants had not done so, they responded that it was "a boutique practice" and that those patients wanted to see a doctor who "looks like" the defendant doctor, a white male.

---

[16] See 793 Fed. Appx. 23, 27 (2d Cir. 2019) (unpublished).

Although this Court found that defendants' alleged comment—that plaintiff was not referred patients because she did not "look like" a white male—is sufficient at the pleading stage to support a reasonable inference of discriminatory motivation, it affirmed the district court's conclusion that plaintiff failed to allege an adverse employment action because the complaint failed to allege that defendants' refusal to refer patients affected her compensation or that it significantly diminished her responsibilities.

While the plaintiff there argued that the lack of referred patients deprived her of income from procedure fees, the complaint did not contain any allegation to that effect.

Based on the foregoing, this Court found in Kairam that, although a *discriminatory motive* has been pled, the Title VII claim was properly dismissed for failure to allege an adverse employment action.

This Court should do the exact same thing here.

To the extent that any discriminatory motive can be inferred from allegations that Guzman supposedly forced Plaintiff to wait twenty or forty minutes longer than other salespersons for finance information,[17] there was no adverse employment

---

[17] Of course, it would be pure speculation and impossible for Plaintiff to establish how many potential customers would have consummated auto sales but for having to wait an additional twenty or forty minutes. Moreover, as argued in Point II, *infra*, this inference cannot be made because Plaintiff herself pleads that – prior to her pregnancy – Guzman struggled to timely provide numbers from the Finance Department, forcing customers to wait, and leaving a bad impression. (A43-44).

action as Plaintiff still would have earned $300.00 had she sold a vehicle. Merely because Plaintiff failed to sell the vehicle, for whatever reason, to earn a "bonus" does not give rise to an adverse employment action.

Indeed, the facts alleged in the complaint here would not give rise to an adverse employment action because a customer could decide not to purchase a vehicle upon receiving numbers from the Finance Department, or for any other number of reasons. As such, Plaintiff's allegations are too speculative to state a claim for relief. See Malone v. N.Y. Pressman's Union No. 2, No. 07-CIV.-9583 (LTS) (GWG), 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) ("The elimination of speculative, potential future opportunities is insufficient to establish an adverse employment action").

The district court reached a different result below because it relied on Davis and McKenna to hold that a resultant decrease in take home pay can constitute an adverse employment action.

But this is not so, for the reasons set forth in Kairam, and because the bonuses denied in Davis and McKenna were discretionary, while the bonus here is not.[18]

In Davis, this Court held that an employer's *discretion* to *withhold or reduce* a bonus does not entitle the employer to allocate the bonus on the basis of prohibited

---

[18] Indeed, Plaintiff's "bonus" is absolute; if she sells a vehicle, she received the commission. There was thus no room for discrimination with respect to her pay.

discrimination.  <u>See</u> 804 F.3d at 236 (emphasis added).  But the complaint here does not allege the exercise of any such discretion; <u>Davis</u> is therefore inapposite.

Similarly, in <u>McKenna</u>, according to the terms of her offer letter, the plaintiff there was eligible "to receive a discretionary bonus …" which was later denied.  <u>See</u> 1:21-CIV.-941 (DLC), 2022 WL 2986588, at *9 (S.D.N.Y. July 28, 2022).

Again, unlike in <u>Davis</u> and <u>McKenna</u>, there is no discretion as to whether Plaintiff gets her bonus.  If she sold the vehicle, she received the bonus; if she failed to sell the vehicle for any reason whatsoever, she does not. Based on the foregoing, it is impossible for Plaintiff to plausibly allege that she suffered a materially adverse employment action because her job consists of dealing with customers who may refuse to purchase a vehicle for any number of reasons.

Accordingly, Plaintiff fails to plead an adverse employment action sufficient to state a claim under Title VII.

## POINT II

## THE COMPLAINT FAILS TO PLEAD
## GUZMAN HAD DISCRIMINATORY INTENT

A plaintiff must allege specific facts that would, if proved, plausibly establish a causal link between the plaintiff's protected characteristic and the alleged adverse action. See Gong v. City University of New York, 846 Fed. Appx. 6, 8 (2d Cir. 2021) (affirming 12(b)(6) dismissal where plaintiff did not connect adverse employment actions to her protected class and therefore failed "to provide a contextual basis for inferring discrimination"); see also Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) (dismissing Title VII claim because "[n]aked assertions of ... discrimination without any specific factual allegation of a causal link between conduct and the protected class too conclusory to withstand a motion to dismiss").

The Second Circuit has instructed that this link may be inferred from (among other things) "invidious comments" about people in the protected group and "the sequence of events leading to the plaintiff's discharge." See Castillo v. Seviroli Foods, Inc., No.: 21-CIV.-5 (EK) (JMW), 2022 WL 889014, at *4 (E.D.N.Y. Mar. 25, 2022) (citing Littlejohn, 795 F.3d at 312).

Here, the complaint fails to allege any facts that can allow for the inference that Guzman discriminated against Plaintiff on account of her pregnancy.

Other than the fact that she was the only pregnant person present in the workplace who had to wait longer than everyone else for Guzman to provide

numbers from the Finance Department, there is nothing to support any discriminatory animus by Guzman or any of the other Defendants.

First, Plaintiff does not plead that Guzman made any invidious comments about her or the pregnancy, and instead pleads that Guzman rationally explained that everybody had to wait, and/or that the process took time. (A46).

Second, Plaintiff does not allege any incident that occurred between her and Guzman that would give rise to an inference that Guzman had a problem with Plaintiff's pregnancy. The complaint instead apparently relies on temporal proximity, alone, to establish that Guzman made Plaintiff wait longer than all other salespersons because she just announced her pregnancy. This inference is nothing more than a leap in logic that defies credulity because any number of reasons could exist for Guzman's failure to provide numbers to Plaintiff more promptly. Crucially, Plaintiff specifically pleads that since August 2018 – before her pregnancy – Guzman was slow in getting numbers for customers in the Finance Department, and that this led to poor impressions with customers. (A44).

Third, Plaintiff's claim of discriminatory treatment is belied by her admission that she was given "special trust" to access Dealertrack in order to make sales, a benefit that no other salesperson received.

Taken together, these allegations do not support an inference of discrimination. Indeed, permitting Plaintiff to proceed on her claims due to the wait

times on the grounds that they affected her sales would have been no different than permitting her to do so due to her revoked access to Dealertrack, which the court below found did not constitute an adverse employment action. (A85). Again, failing to provide an employee with necessary information and/or support does not constitute an adverse employment action. See Costello, 783 F. Supp. 2d at 677–78.

Accordingly, the complaint should be dismissed for failure to state a claim.

## POINT III

## APPELLANT MUST BE DENIED LEAVE
## TO AMEND THE COMPLAINT

It is anticipated that Appellant will argue that she should be given leave to amend in the event of dismissal, and that even if the basis for dismissing the Complaint was legitimate, she should nonetheless be given some kind of "meaningful opportunity to further amend."

But here, the Plaintiff has already been given many opportunities to amend the deficient pleadings. Defendants argued below that leave to replead must be denied because Plaintiff failed to avail herself of amending the complaint in response to Defendants' letter motion for a pre-motion conference in anticipation of their motion to dismiss. (A76-77). Further, amending the complaint would be futile, as the alleged adverse employment actions are not actionable for the reasons above.

25

Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (quotation marks omitted).

Here, after Appellant had been given an opportunity to amend the complaint following Appellee's letter motion for a pre-motion conference in anticipation of a motion to dismiss, she failed to assert then and there that an amendment was requested, let alone necessary. (A1-6).

Further, a district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies, as it did here. See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 188 (2d Cir. 2014). Finally, because – as set forth above – the pleading deficiencies complained of were set forth in Appellee's letter motion for a pre-motion conference in anticipation of their motion to dismiss, they were not unforeseen such that leave should be granted once more to amend. See Banco Safra S.A.-Cayman Is. Branch v Samarco Mineracao S.A., No. 19-3976-CV, 2021 WL 825743, at *5 (2d Cir. Mar. 4, 2021) ("And Banco Safra had ample opportunity to amend its complaint to cure the … deficiencies. It is thus "unlikely that the deficiencies ... were unforeseen") (citing City of Pontiac Policemen's & Firemen's Ret. Sys., 752 F.3d at 188).

Accordingly, granting leave to amend would be futile and must be denied.

**CONCLUSION**

For all of the foregoing reasons, the Appellant's appeal must be granted on the ground that the Complaint fails to state a claim upon which relief can be granted under Title VII. This Court must therefore reverse the decision of the Hon. Hector Gonzalez, U.S.D.J. and dismiss the complaint.

Dated:      Lake Success, New York
             December 14, 2022

                                 Respectfully submitted,

                                 /s/Emanuel Kataev, Esq.
                                 Counsel for Defendant-Appellants
                                 Milman Labuda Law Group PLLC
                                 3000 Marcus Avenue, Suite 3W8
                                 Lake Success, NY 11042-1073
                                 (516) 328-8899 (office)
                                 (516) 303-1395 (direct dial)
                                 (516) 328-0082 (facsimile)
                                 emanuel@mllaborlaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6)

This brief has been scanned for viruses and no virus was detected.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of App. Rule 32(a)(7)(B).

This brief contains 6,269 words, excluding the parts of the brief exempted by App. Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of App. Rule 32(a)(5) and the type style requirements of App. Rule 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 14 point Times New Roman.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Lake Success, N.Y.
This 14th day of December 2022

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Lake Success, N.Y.
This 14th day of December 2022

29